UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE RAE VARAO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 17-cv-02463-LAB (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 22, 24)** |

This Report and Recommendation is submitted to the Honorable Larry A. Burns, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On December 7, 2017, plaintiff Stephanie Rae Varao filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits. (ECF No. 1.) The Complaint was dismissed following a *sua sponte* review. (ECF No. 8.) Plaintiff thereafter filed a Second Amended Complaint on February 15, 2018. (ECF No. 15.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On December 24, 2013, plaintiff filed an application for a period of disability and disability insurance benefits. (Certified Administrative Record ["AR"]) 153-59.) In her application, plaintiff alleged onset of disability on June 3, 2013. (AR 153.) Plaintiff stated that she was unable to work due to a herniated disc L4-5, herniated disc L4 S1, and fibromyalgia. (AR 67, 169.) The application was denied initially and upon reconsideration. (AR 86-89, 94-98.)

On August 6, 2014, plaintiff requested an administrative hearing. (AR 100-01.) A hearing was held before an administrative law judge ("ALJ") on June 17, 2016. (AR 49-66.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE").[1] (AR 49-66.) The ALJ issued a decision on September 21, 2016, finding that plaintiff was not disabled. (AR 25-43.) Thereafter, plaintiff requested a review of the decision by the Appeals Council. (AR 146-52.) The ALJ's decision became the final decision of the Commissioner on October 19, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-7.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff

---

[1] The hearing transcript and the ALJ's decision indicate that a VE testified at the hearing. (*See* AR 41-42, 49, 52.) However, the hearing transcript before the Court is incomplete and does not contain the VE's testimony. (*See* AR 66.)

had not engaged in substantial gainful activity since June 3, 2013, the alleged onset date. (AR 30.)

At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and affective (mood) disorders. (AR 30.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 30.)

Next, the ALJ determined that, from the alleged onset date to the date of the decision, plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary unskilled work, but such work could <u>not</u> have required: (1) lifting more than 10 pounds at a time, on more than an occasional basis; (2) lifting and carrying articles weighing more than 10 pounds, on more than an occasional basis; (3) standing or walking more than 20-30 minutes at one time, and no more than 2 total hours in an 8-hour workday; (4) sitting more than 20-30 minutes at one time, and no more than 6 total hours in an 8-hour work day; (5) more than occasional stooping, bending, twisting or squatting; (6) working on the floor (e.g., no kneeling, crawling or crouching); (7) ascending or descending full flights of stairs (but a few steps up or down not precluded); (8) overhead lifting or overhead reaching; (9) working in other than a low stress environment, which means (a) a low production level (where VE classified all SGA jobs as low, average or high production); (b) no working with the general public and no working with crowds of co-workers; (c) only "occasional" verbal contact with supervisors, and only "occasional" verbal contact with co-workers; (d) the ability to deal with only "occasional" changes in a routine work setting; (10) work at no more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only routine unskilled tasks; or (11) work at no more than a low memory level, which means (a) the ability to understand, remember and carry out only "simple" work instructions; (b) the ability to remember and deal with only "rare" changes in routine work instructions; (c) the ability to remember and use good judgment in making

only "simple" work related decisions. (AR 32-33.) Regarding standing/walking and sitting, the ALJ added that plaintiff must be as comfortable as possible, and requires the option to make the postural changes noted above; thus there must be an option to perform work duties while standing/walking or sitting, due to the need for these postural changes. (AR 32.)

For purposes of his step four determination, the ALJ first found that plaintiff had prior relevant work as an accounting clerk. Based on the VE's testimony that plaintiff could no longer perform that job based on her RFC to perform only unskilled sedentary work, the ALJ found that plaintiff was unable to perform any past relevant work. (AR 41.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, cutter and paster; document preparer; and polisher, eyeglass frames), the ALJ found that plaintiff was not disabled. (AR 42.)

## SOLE ISSUE IN DISPUTE

The sole issue in dispute in this case is whether the ALJ properly rejected the opinion of Richard Fassett, M.D., plaintiff's treating physician. (*See* ECF No. 22-1 at 4-12.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole

and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

Medical opinions are among the evidence that the ALJ considers when assessing a claimant's RFC. *See* 20 C.F.R. § 404.1527(b). The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).[2]

---

[2] The parties here agree that the "specific and legitimate reasons" standard applies to Dr. Fassett's opinion. (*See* ECF No. 22-1 at 11; ECF No. 24-1 at 5.)

In a lumbar spine RFC Questionnaire, dated June 1, 2016, Dr. Richard Fassett, plaintiff's treating physician, diagnosed plaintiff with lumbar degenerative disc disease L4-5-S1 and right sacroiliitis. (AR 643.) Dr. Fassett identified MRI evidence showing plaintiff's medical impairments and gave her a prognosis of fair, but noting that it had been three years and it was "still not resolved." (AR 643.) Dr. Fassett characterized plaintiff's pain as low and mid-back pain, from the right leg to big toe. (AR 643.) He noted that the pain comes and goes, but plaintiff can't stand or sit too long, do house chores, and her walking pain is 10/10 when bad. (AR 643.) Plaintiff can walk one to two city blocks without rest or severe pain. (AR 645.)

Dr. Fassett opined that plaintiff has limited range of motion of the spine, abnormal gait and tenderness. (AR 644.) He further opined that emotional factors contribute to the severity of plaintiff's symptoms and functional limitations, but plaintiff's impairments (physical impairments plus any emotional impairments) are reasonably consistent with the symptoms and functional limitations he describes in his evaluation and that plaintiff is not a malingerer. (AR 644-45.) Dr. Fassett also opined that plaintiff would have the following limitations: (1) plaintiff's pain or other symptoms would frequently interfere with attention and concentration needed to perform even simple work tasks; (2) plaintiff can sit 20 minutes at one time before needing to get up; (3) plaintiff can stand 30 minutes at one time before needing to sit down; (4) plaintiff can sit and stand/walk (with normal breaks) less than 2 hours in an 8-hour working day; (5) plaintiff needs to include periods of walking around during an 8-hour working day, approximately 5-6 minutes of walking every 20 minutes; (6) plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking; (7) plaintiff will need to take unscheduled breaks of 10 minutes approximately 4 times during an 8-hour working day; (8) plaintiff can never lift and carry 10 pounds or more in a competitive work situation; (9) plaintiff can never twist, stoop/bend, crouch/squat, climb ladders, and climb stairs; (10) plaintiff can only reach with her arms, including overhead, 20% of the time during an 8-hour workday; and (11) plaintiff is likely

to be absent from work as a result of the impairments or treatment more than four days per month. (AR 646.)

Here, the ALJ determined that Dr. Fassett's opinions were only entitled to "little weight" for four reasons that the Court will address in turn.

### A. Supposed inconsistency with other examinations

The first reason cited by the ALJ for according "little weight" to Dr. Fassett's opinion was that it was "inconsistent with repeated examinations that were generally normal, and included the following: normal muscle bulk and tone in the upper extremities, generally full strength throughout, normal and symmetric reflexes, intact sensation, a negative Romberg sign, normal coordination, no Babinski or Hoffman's signs, full range of motion in all extremities, negative bilateral straight leg tests, and a normal gait." (AR 37, citing AR 279, 298-300, 301, 360-62, 401-02, 487, 522, 535-38, 605-06.) However, the ALJ did not explain how Dr. Fassett's opinions were inconsistent with these examinations or specify which of Dr. Fassett's several opinions were inconsistent with these examinations. The Court notes that Dr. Fassett did not opine on plaintiff's muscle tone and strength, coordination, reflexes, sensation, range of motion in all extremities, and bilateral straight leg tests. (*See* AR 643-47.) "An ALJ may not exclude a physician's testimony for a lack of objective evidence of impairments not referenced by the physician. Rather, an ALJ must evaluate the physician's assessment using the grounds on which it is based." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).

Dr. Fassett did opine that plaintiff had an abnormal gait, an opinion which the Commissioner acknowledged had additional support in the record. (*See* AR 644, ECF No. 24-1 at 6; *see also* 499, 504, 514.) However, Dr. Fassett also opined that plaintiff did not need to use a cane or other assistive device while engaging in occasional standing or walking, and the ALJ acknowledged plaintiff's difficulty walking by incorporating walking limitations consistent with Dr. Fassett's opinion into plaintiff's RFC. (*See* AR 32, 646.)

7

Dr. Fassett also opined that plaintiff had limited range of motion of the spine, but the ALJ does not cite any objective evidence to contradict this opinion. Rather, as plaintiff pointed out, the objective evidence in the record does indicate that plaintiff had limited range of motion of the spine. (*See, e.g.,* AR 412, 461, 495, 505, 511.)

Accordingly, the Court finds that this first reason was not a legally sufficient reason for rejecting the opinion of Dr. Fassett.

**B.	Supposed inconsistency with plaintiff's testimony regarding her pain medication**

The second reason cited by the ALJ for according "little weight" to Dr. Fassett's opinion was that Dr. Fassett's opinion was "inconsistent with [plaintiff's] own testimony that she has not taken a Percocet in over a month or even required Ibuprofen in a week." (AR 37.) As an initial matter, as noted by plaintiff, the Court acknowledges that the hearing transcript cuts off when plaintiff starts to elaborate on her use of pain medication. (*See* AR 65-66.) Generally, "[w]hen a Social Security hearing transcript is lost or inaudible, good cause exists to remand and start anew pursuant to sentence six of 42 U.S.C. § 405(g)." *Newborn v. Colvin*, No. 2:12-CV-3153-TOR, 2017 WL 216703, at *3 (E.D. Wash. Jan. 18, 2017) (citing H.R. Rep. No. 96–944, at 59 (1980)). Here, however, in addition to a partial hearing transcript, the ALJ details plaintiff's prescription history in his decision in a manner consistent with the underlying medical records. Therefore, the Court finds it has adequate information to evaluate this reason.

First, the abbreviated hearing record before the Court reflects that plaintiff testified before the ALJ that at the time she resigned from her job of ten years in June 2013 due to her medical condition, she was in "so much pain" that she "was popping pills like crazy at [her] desk trying to make it through the day." (AR 53-54, 58.) Plaintiff later elaborated that she wasn't "taking any pain pills on the job" as she doesn't "believe in taking them and driving." (AR 64.) She was "just popping Motrin, ibuprofen," 800[mg] at a time,

sometimes three times a day, and putting a heating ointment on her back. (AR 64-65.) She was "just trying everything" and nothing really helped. (AR 64-65.)

Second, the ALJ detailed plaintiff's prescription history in his decision in a manner consistent with the underlying medical records, as follows:

> At the hearing, [plaintiff] assessed that her pain was an eight on a ten-point scale and accompanied by spasms. She struggled to work with the pain, cried frequently, and had to "pop pills" of over-the-counter medication all day to make it through work. Her back pain has worsened over time and fluctuates, which makes it difficult to schedule events. She was prescribed Vicodin, but it made her sick so she did not take the medication. She was also prescribed Gabapentin, which worked for a little while, then stopped. She now takes Percocet as needed, Nexium for acid reflux, Valium, and an antidepressant. She has not taken a Percocet in over a month, when her pain was a ten on a ten-point scale. Sometimes she takes Ibuprofen, but her most recent dose was last week. She goes entire days without any pain medication. For pain relief, she lies down. She changes position among laying, sitting, standing, and walking every hour. When she lies down, it is for an hour at a time up to three hours if she falls asleep. She experiences side effects from pain medication. Percocet makes her tired. Surgery has not been recommended due to the [plaintiff's] age. While she does not want to take potentially addictive medication, she has not explored non-addictive options. With regard to the [plaintiff's] mental health, she "cries a lot", struggles with sleep, and has trouble focusing and remembering. She has to write everything down. She takes Xanax for her anxiety.

(AR 33-34; *see also* AR 279, 298 ("She has tried Norco without benefit. . . . She tried ibuprofen without benefit."); 301; 360 ("She's only taking a little bit of gabapentin at bedtime, she has some GI problems and doesn't want to take narcotics . . . ."); 485 ("She has tried NSAIDS in the past without relief."); 535 ("She ran out of her last oxycodone yesterday; this only gave her over 10% relief in any case."); 537 (Doctor "recommend[s] against continuation of narcotics at this time. She has had some constipation and really have not given her much relief to begin with."); 608; 612.)

In his decision, the ALJ did not indicate how this testimony was inconsistent with Dr. Fassett's opinion. The Commissioner construes this reason as indicating that the ALJ "found the efficacy of conservative treatment modalities undermined limitations beyond

[p]laintiff's RFC." (ECF No. 24-1 at 7.) Alternatively, the Commissioner suggests Dr. Fassett's opinion is undermined because plaintiff's medical providers "did not recommend more aggressive treatment." (*Id*. at 8-9.) The Court finds neither reason persuasive.

To the extent that the ALJ purportedly rejected Dr. Fassett's opinion because he believed plaintiff's treatment was conservative, the Court is mindful that an ALJ may properly reject a treating physician's opinion on that ground. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, however, the record reflects that plaintiff was routinely prescribed medications for her pain – including Hydrocodone, Vicodin, Excedrin, Gabapentin, Valium, Tylenol, Naproxen, and Ibuprofen – that in the Court's view cannot properly be characterized as conservative. (*See e.g.*, AR 279, 298, 301, 360, 485, 535, 537, 608, 612.)[3] The fact that plaintiff found little to no benefit in the medication and/or could not tolerate the side effects does not render her treatment any more or less conservative. Moreover, as the ALJ noted, the record also reflects that plaintiff did pursue more aggressive treatment. (*See* AR 34-36.) Plaintiff received several epidural injections, including a selective nerve root block, was referred for pain management, and underwent physical therapy. (*See id*.) Plaintiff was also referred to a neurosurgeon, Dr. Arnett Klugh, who advised her that spinal surgery was unavailable for her ailments. (*See* AR 35, 400.) None of this suggests a conservative approach to treating plaintiff's pain.

To the extent ALJ purportedly rejected Dr. Fassett's opinion because plaintiff allegedly found a benefit in "conservative treatment modalities," the Court does not find evidence in the record to support this claim. The Commissioner highlighted treatment notes indicating that plaintiff experienced improvement at her physical therapy

---

[3] *See e.g., Kager v. Astrue*, 256 F. App'x. 919, 923 (9th Cir. 2007) (rejecting adverse credibility determination premised on absence of significant pain therapy where claimant took prescription pain medications including Methocarbomal and the narcotic analgesics Roxicet and Valium); *cf. Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (treatment corroborating allegations of severe and unremitting pain may include a strong Codeine or Morphine basic analgesic).

appointment in June 2015. (ECF No. 24-1 at 7.) However, in May 2016, plaintiff underwent MRIs which demonstrated that her condition was "[s]table to exam dated 09/27/14 with similar appearing findings involving the right sacroiliac joint consistent with chronic unilateral sacroiliitis," as well as "[u]nchanged disc protrusions at L4-5 and L5-S1 as compared to prior MRI from 09/27/2014," thus suggesting plaintiff's underlying condition did not improve over that time. (AR 660.) Moreover, neither plaintiff nor her physicians ever indicated that she received more than temporary relief from physical therapy or treatment. (*See, e.g.,* AR 334, 337 (indicating physical therapy made plaintiff's symptoms worse or provided no benefit); 495-516 (plaintiff's physical therapy notes indicating only temporary relief after sessions); AR 279, 365, 337, 341 (plaintiff received little relief from her epidural injections).)

Accordingly, the Court finds that this second reason also was not a legally sufficient reason for rejecting Dr. Fassett's opinion.

### C. Supposed inconsistency with plaintiff's activities of daily living

The third reason proffered by the ALJ for according "little weight" to Dr. Fassett's opinion was that it was "inconsistent with the breadth of the claimant's activities of daily living." (AR 37.) The ALJ noted in this regard that plaintiff "does the laundry, wipes counters, and washes dishes," and added that "[a]side from some pain with standing, [plaintiff] reported no difficulties in any activity of personal care, including bathing, dressing, caring for her hair, shaving, feeding, and toileting." (AR 37-38, citing AR 193, 194.)

At the administrative hearing, plaintiff testified that her daily life was "pretty boring" and that she did not "have much of a social life." (AR 56.) She testified that she could not "schedule things because [she was] constantly having to cancel because [it was] day to day." (AR 56-57.) She never knew how she was going to feel. (AR 57.) Her life was basically "consumed by the pain" and she had "no choice in [her] daily activities sometimes." (AR 57.) Plaintiff testified that she was not able to clean her home, and could

only go grocery shopping if she had someone with her. (AR 57.) When she would go grocery shopping, plaintiff testified that she would "try to get in and out" in 20-30 minutes, and even then, sometimes her leg would give out while shopping. (AR 61.) She further testified did not cook every day, but if she did cook, it was "something that easy and simple so that [she was] not standing for a long period cutting stuff up." (AR 57.) Plaintiff testified that she drove her son to school three days a week and her mom picked him up after. (AR 57.) Plaintiff added that "[a] lot of times [she did not] leave the house unless [she] ha[d] doctors' appointments and those sometimes [she] ha[d] to cancel because [she could not] get in the car to go sit in a chair . . . ." (AR 57.)

In addition, in a "Function Report" dated January 2, 2014, plaintiff stated as follows: "I can barely make it through grocery store without leg giving out [and] pain radiating. I cannot lift 10 lbs or more. I cannot stand long nor sit long. I have to lay flat a lot. Even house chores are hard to do. Have someone help clean my house every 2 weeks." (AR 192.) Plaintiff further stated that she was living with her 14-year old son and friend Ruthan while her husband was deployed, and that both helped her out around the house. (AR 193.) She stated that she sometimes has pain due to standing when she dresses, bathes, and shaves, but she is able to care for her hair, feed herself, and use the toilet. (AR 193.) Plaintiff added that she can also manage laundry, wipe counters, and do dishes, but she cannot stay on her feet for long or lift items over 10 pounds as it takes a toll on her back. (AR 194-97.)

An inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir.1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). But this principle has no application here because a holistic review of the record does not reveal an inconsistency between Dr. Fassett's opinion and plaintiff's daily activities. Plaintiff's reported daily

activities do not indicate she was capable of standing, sitting, or walking longer than indicated by Dr. Fassett. Although plaintiff was capable of limited household chores, the ALJ does not explain how plaintiff's ability to do laundry, wipe counters, and personally care for herself is inconsistent with the limitations set forth by Dr. Fassett. A claimant need not be completely incapacitated to receive benefits. *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

As plaintiff's limited daily activities are not in tension with the opinions of Dr. Fassett, the Court finds that this third reason also was not a legally sufficient reason for rejecting Dr. Fassett's opinion.

### D. Plaintiff's failure to seek physical therapy

The final reason proffered by the ALJ for according "little weight" to Dr. Fassett's opinion was the fact that plaintiff "did not attend physical therapy for a month because of her 'busy schedule.'" (*See* AR 38, citing AR 516.) An ALJ may consider the failure to seek treatment or follow a prescribed course of treatment in weighing a claimant's credibility. *See Orn*, 495 F.3d at 636 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)). Thus, "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so" applies. *Id*. at 638 (citing *Fair*, 885 F.2d at 603).

Here, however, the ALJ cited this reason in support of rejecting the opinion of plaintiff's treating physician, not in weighing plaintiff's credibility. The ALJ does not explain how plaintiff's failure to attend physical therapy for a single month in October 2015 is a basis for rejecting Dr. Fassett's June 2016 opinion based on plaintiff's MRI evidence and a physical examination. (*See* AR 643-47.) Moreover, as plaintiff noted, the record concerning this period of time in plaintiff's life is unclear, particularly given the abbreviated hearing transcript. (*See* ECF No. 22-1 at 11.)

Accordingly, the Court finds that this final reason also was not a legally sufficient reason for rejecting the opinion of Dr. Fassett.

**E.     The Court declines plaintiff's request to credit Dr. Fassett's opinion as true for purposes of the further proceedings on remand.**

Plaintiff contends that the Court should credit Dr. Fassett's opinion as true for purposes of the further proceedings on remand. (*See* ECF No. 22-1 at 11-12.) The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, in *Ghanim*, a case decided after *Garrison*, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. *Ghanim*, 763 F.3d at 1167. And, in *Marsh v. Colvin*, 792 F.2d 1170 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating source's opinion that the claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions. *Id*. at 1173. The Court here has decided that the ALJ should be afforded the opportunity to clarify or further develop the respects in which Dr. Fassett's assessment should be credited.

**CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the

14

17-cv-02463-LAB (RNB)

Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See* Fed. R. Civ. P. 72(b)(2). *See id.*

Dated: August 3, 2018

_____
ROBERT N. BLOCK
United States Magistrate Judge